THOMAS H. MASTIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket Nos. 3425, 20834.   Promulgated May 25, 1927.

> Amounts paid out to petitioner's mother and aunt as part con-
> sideration for stock *held* to be capital expenditures and not
> deductible from gross income.

*Chas. M. Howell, Esq., James Hagerman, Jr., Esq., Daniel V.
Howell, Esq.,* and *Joseph S. Brooks, Esq.,* for the petitioner.
*John D. Foley, Esq.,* for the respondent.

These proceedings, which were consolidated for the purpose of
hearing and decision, are for the redetermination of deficiencies in
income taxes for the calendar years 1918, 1919, 1920, and 1922, in
the amounts of $6,394.60, $13,937.41, $7,309.46, and $3,483.58,
respectively.

The questions involved are (1) whether amounts paid by the peti-
tioner during the years involved to his mother and aunt in accord-
ance with the provisions of the terms of a written instrument are
deductible as ordinary and necessary expenses, or whether such
amounts represent capital expenditures or gifts, and (2) the deducti-
bility of an amount paid by the petitioner for the purpose of
advertising real estate owned by a corporation of which he was a
stockholder.

#### FINDINGS OF FACT.

The petitioner is an individual and a citizen of the United States,
residing in Kansas City, Mo.   In 1905 the petitioner, his aunt,
Julia Mastin, his mother, Elizabeth Simpson Mastin, and his sister,
Theo Mastin, were the owners of properties, or equities therein,
some of which consisted of mining interests and lands.   A few of
these interests were productive of income.   On the death of peti-
tioner's father in 1904, it became necessary for the petitioner to
look after the interests that his father had been looking after in addi-
tion to the interests he had been looking after prior to his father's
death.   There was at that time an indebtedness of about $800,000.
The taxes and interest, in addition to the above amount, amounted
to approximately $100,000 a year.   The income from the properties
was not sufficient to meet the obligations and it became necessary
to refinance the properties.

An agreement was made and entered into between Julia Mastin,
Elizabeth Simpson Mastin, Theo Mastin, Thomas H. Mastin and
Martha B. Mastin, wife of the petitioner, which was as follows:

> THIS AGREEMENT, made and entered into, in quadruplicate, this 21st day of
> July, 1905, by and between Julia Mastin, Elizabeth Simpson Mastin, Theo

Mastin and Thomas H. Mastin, Martha B. Mastin, the wife of Thomas H. Mastin, joining herein as such wife, WITNESSETH, That,

WHEREAS, Julia Mastin and Elizabeth Simpson Mastin and Thomas H. Mastin are the owners of the interests and properties mentioned in the schedule hereto attached and described in such schedules as schedules of the assets of the respective parties mentioned; and

WHEREAS, because of the liens upon certain of such assets, it is necessary to provide for money or credit in order to protect, preserve and realize upon same to the best advantage, and said Thomas H. Mastin and Elizabeth Simpson Mastin are willing to furnish such money and credit to the extent of their personal resources as so scheduled and upon the conditions hereinafter set forth; and

WHEREAS, said Julia Mastin and Elizabeth Simpson Mastin are advanced in years and desire to provide for the business management of their said assets scheduled by them to the extent and upon the conditions of the trust hereinafter set forth, and said Thomas H. Mastin is willing to undertake such management upon the conditions hereinafter set forth; and,

WHEREAS, the parties hereto are related and desire that said Thomas H. Mastin and Theo Mastin and their consorts and descendants shall, subject to provision for an income for life to said Julia Mastin and Elizabeth Simpson Mastin, enjoy the benefits of the common estate as hereinafter provided, and to effect this purpose said Thomas H. Mastin and Elizabeth Simpson Mastin are willing to contribute the property scheduled by them, and the said Thomas H. Mastin is willing to undertake the trust herein provided for upon the condition of provision for his sister and himself. as hereinafter set forth.

Now THEREFORE, In consideration of the premises and mutual love and affection, and of the respective contributions and agreements of the parties hereto, it is agreed that a corporation shall be caused to be formed . by said Thomas H. Mastin under the laws of such jurisdiction as may be selected by him upon the advice of attorneys, with a capital stock of at least Fifty Thousand Dollars, ($50,000.00), to be divided into shares of One Hundred Dollars ($100.00) each, which corporation shall be authorized to acquire, hold, manage, dispose of, sell and reinvest in any property of the character scheduled and other similar properties, the particular form of the statement of corporate purposes and the name of the corporation, and the general terms of its charter to be determined by said Thomas H. Mastin upon the advice of attorneys for the purpose of effecting the ends of this agreement; and that all of the foregoing interests as scheduled shall be conveyed, transferred, assigned and delivered to such corporation in payment for the capital stock thereof, and the same is hereby conveyed, transferred and assigned to said Thomas H. Mastin, in trust for such corporation to be formed on account thereof; that all of the capital stock of such corporation, except the number of shares necessary to qualify the persons other than said Thomas H. Mastin, acting as directors, shall be held by said Thomas H. Mastin, as trustee upon the following conditions.

FIRST: Said trustee shall vote such stock according to his best judgment for the purpose of controlling and managing the business of such corporation and of the corporations in which such corporation to be formed may be a stockholder.

SECOND: Such trustee, shall, during the life of Julia Mastin, Elizabeth Simpson Mastin, Theo Mastin and Thomas H. Mastin distribute the dividend declared on such capital stock held in trust to each of such four undivided interests in equal amounts.

THIRD: Each of such four interests shall terminate with the death of the parties entitled to enjoy respectively such respective interests and such dividends shall thereupon be apportioned among the still surviving interests equally to each interest until there shall be but one interest still surviving, in which last event such trust shall terminate and such trustee shall transfer the title to such stock pro rata to the parties then entitled to the benefits thereof in proportion to their then respective rights to dividends.

FOURTH: In the use of the term "interest" as aforesaid, it is understood and agreed that said Julia Mastin and Elizabeth Simpson Mastin shall each personally and solely constitute one interest; that the said Theo Mastin and her husband and lineal heirs of her body, if she shall have such or either thereof, shall constitute one interest; that said Thomas H. Mastin and his wife and lineal heirs of his body, if he shall have such, shall constitute one interest.

FIFTH: While said Theo Mastin shall live, the dividends apportionable to her interest shall be payable to her individually. If the said Theo Mastin die leaving a husband or lineal heirs of her body, the dividends apportionable to her interest shall be paid to such husband and such heirs, so long as there shall be a husband or such heirs, in proportion to their interests as surviving husband or such heirs of such Theo Mastin.

If said Theo Mastin shall die without leaving a husband or lineal heirs of her body, or if she die leaving a husband or such heirs, and such husband and such heirs all die before the termination of all the other interests hereunder, then the interest of said Theo Mastin shall terminate and be extinguished.

SIXTH: While said Thomas H. Mastin shall live, the dividends apportionable to his interest shall be payable to him individually, and if he shall die leaving a wife or lineal heirs of his body, such dividends shall be paid to such wife and such heirs in proportion to their interest as surviving wife and such heirs of said Thomas H. Mastin:

If said Thomas H. Mastin shall die leaving a wife or lineal heirs of his body, and such wife and such heirs all die before the termination of all the other interests hereunder, then the interest of said Thomas H. Mastin shall terminate and be extinguished.

SEVENTH: Upon the death of all the parties hereto, or in case said Julia Mastin, Elizabeth Simpson Mastin and Thomas H. Mastin shall die before said Theo Mastin, this trust shall terminate, and such stock shall thereupon be transferred by the trustee to the persons who are then entitled to the dividends therefrom in the ratio of their respective interests therein.

EIGHTH: Collateral heirs or consorts of descendants of said Theo Mastin and Thomas H. Mastin shall not be considered as or become entitled to any rights as heirs under the provisions of this trust.

NINTH: Such Trustee, shall, before the distribution of dividends, pay the actual expenses of household maintenance and sustenance for such beneficiaries of said trust as shall then continue to reside in the residence now jointly occupied by the parties hereto or as a common family in any other place of residence selected by such trustee in case of the sale of the present residence; and in the absence of dividends such trustee may advance the funds necessary for such expenses and deduct same from dividends thereafter earned.

TENTH: In the case of the death, disability or refusal of said Thomas H. Mastin to act as Trustee, a successor in such trust may be appointed by instrument in writing signed by a majority in number of the adult individuals then entitled to the benefits of said trust, signed, acknowledged and recorded in the office of the Register of Deeds of Jackson County, Missouri, in the manner then

provided by law for the execution, acknowledgment, and record of instruments conveying interests in real estate situated in said Jackson County, Missouri; and in the event of further vacancies by death disability or refusal of any successor trustee such vacancy may be filled in like manner. In the case of the refusal or inability of such majority to so agree for thirty days after the existence of any vacancy, a successor trustee may be appointed by the Circuit Court of Jackson County, Missouri, upon the petition of any party in interest after ten days notice of the time and place of the presentation thereof, by publication in any newspaper of General Circulation in Kansas City, Missouri, and by service by the sheriff of Jackson County, Missouri, or any of his deputies, of a copy of such notice upon each of the parties in interest then resident of and actually being in said Jackson County, Missouri, in the same manner as may then be provided by law for the service of summons, at least ten days before the presentation of such petition, and proof thereof made to such Court by the return of such officer. Upon the appointment of any successor trustee, such trustee shall immediately become vested with the legal title to the stock so held in trust, and be entitled to perform the duties and become subject to the obligations of such trust.

IT IS UNDERSTOOD That as to the interest in the Mastin, Drennon, Schafer Company, described in the above referred to schedule of Thomas H. Mastin, it is contemplated that a trust is to be created between the said Thomas H. Mastin and his co-stockholders, in the said Mastin, Drennon, Schafer Company, providing for certain changes in interest in case of death of such stock-holders or their failure to continue as active officers and employees of such corporation, and this agreement is made subject to the creation of such proposed trust, and the right is reserved to Thomas H. Mastin to substitute such personal interest as may pertain to himself individually under such proposed trust arrangement for the interest in the Mastin, Drennon, Schafer Company as scheduled by him.

IN WITNESS WHEREOF, The parties hereto have hereunto set their hands on the day and year first above written.

Pursuant to the terms of that contract a corporation was organized under the name of the Mastin Realty & Mining Co., to which the parties conveyed all of the interests they had in the properties, and in addition thereto another corporation was organized as a holding company for the purpose of holding the stock of the Mastin Realty & Mining Co. This corporation was known as the Mastin Estate, and the stock of the Mastin Realty & Mining Co. was conveyed to that corporation. The stock of the holding company was held by the petitioner as trustee in accordance with the contract. The petitioner managed and directed the corporations. He did considerable financing for the purpose of protecting the properties and the equities therein which had been conveyed to the corporation. He arranged a loan of $400,000, which was secured by a bond issue. Only $272,000 of that amount, however, was needed and used by the corporation. A number of the equities were sold and the proceeds applied to the payment of debts against other properties. Up until 1914 there was not enough income coming into the corporation to meet the expenses.

The petitioner's mother and aunt needed funds for their living expenses and maintenance. As a consequence another contract was entered into in 1914. That contract is as follows:

THIS AGREEMENT, made and entered into this 2nd day of April, 1914, by and between Julia Mastin, Elizabeth Simpson Mastin, Theo Mastin Lovejoy, Thomas H. Mastin, Martha Brent Mastin and George Edgar Lovejoy, all of Kansas City, Jackson County, Missouri, WITNESSETH:

THAT. WHEREAS, Julia Mastin and Elizabeth Simpson Mastin are each owners of certain shares of stock in Mastin Estate and Mastin Realty and Mining Company, corporations organized and existing according to the laws of the State of Missouri, and other property in Jackson County, Missouri, and elsewhere, and,

WHEREAS said Julia Mastin and Elizabeth Simpson Mastin are advanced in years and desire to provide for the care and management of said shares of stock and the property and business they represent and all the other property by them owned, and desire to divest themselves of the title, management and control of the said shares of stock and properties, and the said property abovesaid, and to vest the title to same in said Thomas H. Mastin and Theo Mastin Lovejoy upon the agreements and considerations hereinafter set forth; and

WHEREAS said Thomas H. Mastin is willing to undertake the management and control of said shares of stock and properties and has this day agreed, and does hereby agree to undertake the management and control thereof, for the purpose of realizing an income and profit therefrom for the benefit and use of all the parties hereto.

Now THEREFORE, in consideration of the premises and in consideration of the relationship of the parties, and in consideration of mutual love and affection and certain large sums heretofore advanced and paid out by the said Thomas H. Mastin for them, they, the said Julia Mastin and Elizabeth Simpson Mastin, do hereby transfer, set over and assign to the said Thomas H. Mastin and Theo Mastin Lovejoy all their right, title and interest in and to all the shares of stock in Mastin Estate and Mastin Realty and Mining Company by them owned, together with all dividends thereon accrued, and all the other property, of whatever character, by them owned as hereinabove mentioned, for and in consideration of the premises and considerations above set forth, and upon the further consideration that said Thomas H. Mastin and Theo Mastin Lovejoy shall pay the actual expenses and household maintenance and sustenance and support of the said Julia Mastin and Elizabeth Simpson Mastin during their natural lives, respectively whether they shall continue to reside in the residence now occupied by them or shall reside in some other place of residence by them hereafter selected.

And it is further hereby agreed by and between the parties hereto that in the event the dividends and profits derived from the shares of stock hereinabove mentioned and described shall not be sufficient to provide for the said expenses and household maintenance and sustenance and support of the said Julia Mastin and Elizabeth Simpson Mastin that the said Thomas H. Mastin and the said Theo Mastin Lovejoy will provide and furnish such further sum or sums as shall be necessary for providing such expenses for household maintenance and sustenance and support, and they, the said Thomas H. Mastin and Theo Mastin Lovejoy hereby agree· to pay same in the manner hereinabove agreed upon.

And the said Julia Mastin and Elizabeth Simpson Mastin do hereby assign, transfer and set over and deliver to the said Thomas H. Mastin and the

said Theo Mastin Lovejoy all the property hereinabove described, being all the property, of whatever character, by them owned at the date of this contract, it being the intent of the said Julia Mastin and Elizabeth Simpson Mastin to assign, transfer and convey all their property, of every kind and nature, to the said Thomas H. Mastin and Theo Mastin Lovejoy for and in consideration of the other considerations, covenants and agreements herein entered into, and upon consideration whereof the said Thomas H. Mastin and Theo Mastin Lovejoy do hereby agree to perform all the agreements herein made on their part, and to the full execution, consummation and performance of this contract they do hereby bind themselves, their heirs, executors and administrators unto the said Julia Mastin and Elizabeth Simpson Mastin.

This contract is made in substitution for and in lieu of all other contracts heretofore entered into by and between the parties hereto, and all rights and interests raised or created therein and hereby abrogated, particular reference being hereby made to a contract of date February 6, 1906, between the parties hereto, which said contract is hereby cancelled and annulled as of date of its execution.

IN WITNESS WHEREOF the parties hereto have hereunto subscribed their names to quadruplicate copies hereof, this 2nd day of April, 1914.

When the expenses of maintaining the properties and paying interest, taxes and other expenses exceeded the income from the properties, the petitioner paid the excess himself out of his own personal funds, he being engaged in another business at the time.

During the taxable years in question, the petitioner paid out to his mother and aunt $12,346.64 in 1918, $11,783.64 in 1919, $14,852.24 in 1920, and $10,567.13 in 1922. These amounts were paid out by him for their support and maintenance pursuant to the terms of the written instrument dated April 2, 1914, a copy of which is set out above.

The contract dated July 21, 1905, under which the petitioner managed the affairs of the corporations as trustee, was canceled and annulled by the contract of April 2, 1914, which contract was substituted for and took the place of the prior contract.

Under the terms of the agreement of April 2, 1914, the petitioner's mother and aunt conveyed to the petitioner and Theo Mastin Lovejoy all of their right, title and interest in the shares of stock in the Mastin Estate and the Mastin Realty & Mining Co. owned by them, together with all dividends thereon accrued and all of the other property of whatever character by them owned as set out in that instrument. In consideration thereof the petitioner and Theo Mastin Lovejoy agreed, among other things, to pay the actual expenses and household maintenance, sustenance and support of the said Julia Mastin and Elizabeth Simpson Mastin, the mother and aunt of petitioner, during their natural lives, and it was further agreed that if the dividends and profits from the shares of stock were not sufficient to provide for the said expenses, household maintenance, sustenance and support of the two persons named, the petitioner and

Theo Mastin Lovejoy should provide and furnish such further sums as should be necessary.

The petitioner in 1919 paid out the sum of $4,245.25 to Brent & Crittenden, real estate agents, for advertising real estate owned by the Mastin Realty & Mining Co. The petitioner owned stock in the corporation but did not own any of the real estate which was to be advertised. The other stockholders of the corporation did not pay out anything in this connection. The petitioner paid out the money because he deemed it an advantageous movement for the corporation and its stockholders. The Mastin Realty & Mining Co. and others owned large property interests on the southern border of the principal business district in Kansas City. A movement was started by the parties to advertise this section. The amount so paid to Brent & Crittenden was to be distributed by them.

### OPINION.

TRAMMELL: The petitioner contends that the payments to his mother and aunt were made pursuant to an obligation assumed in a business transaction in which they were associated, and that as such they were losses incurred in business or in a transaction entered into for profit within the meaning of the Revenue Act of 1918, and as such are deductible. The respondent, on the other hand, contends that the payments represent either gifts or capital expenditures and did not constitute allowable deductions as losses.

The contract of 1914 by its terms canceled the contract of 1905 under which the petitioner was acting as trustee. The 1914 contract was entirely different. It specifically provided that the petitioner's mother and aunt conveyed to the petitioner and Theo Mastin Lovejoy all their right, title and interest in the shares of stock which belonged to them. One of the considerations for this was the agreement on the part of the petitioner and Theo Mastin Lovejoy to provide for the maintenance and support of their mother and aunt. The amounts paid out during the taxable years for the support of these people was in accordance with the terms of that agreement. In our opinion, these payments constitute consideration for a capital asset. It is no different than if petitioner's mother and aunt had sold the stock for a cash consideration. In that event it could hardly have been contended that the cash paid for the stock was deductible as a loss unless or until the stock became worthless or the loss had been realized. Here the stock was to be paid for over an indefinite number of years until the death of the persons who were being paid for it. Both of these people died in 1922.

We, therefore, agree with the Commissioner in holding that the payments were capital expenditures.

On the question of a deduction on account of the payment of the sum for advertising the property owned by the corporation, the petitioner contends that this amount was deductible either as a loss sustained directly in the management and control of the stock which had not been compensated for by insurance or otherwise, or that it was deductible as a contribution. We can not agree with either theory advanced by the petitioner. It clearly can not be allowed as a contribution. The amounts paid out for advertising might properly have been allowed if paid out by the corporation as ordinary and necessary expenses, but in this case it was not paid out by the corporation. The petitioner did not pay it out for advertising his own property. The only benefit he could have obtained from it was the benefit which it might have added to his stock through the increase in value that might have resulted to the property of the corporation. If the payment be held to represent an additional investment, it could not be allowed as a loss unless or until the stock was sold or determined to be worthless. In our opinion, the amount is not deductible in determining the petitioner's net income.

*Judgment will be entered for the respondent.*

MILLIKEN not participating.